[Cite as *State v. Fox*, 2015-Ohio-3892.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | Case No. 14CA36 | |
| Plaintiff-Appellee, | : | | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> | |
| MINDY S. FOX, | : | | |
| Defendant-Appellant. | : | RELEASED 09/18/2015 | |

<u>APPEARANCES</u>:

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

Hoover, P.J.

{¶1}  Defendant-appellant, Mindy S. Fox, appeals from her convictions of aggravated robbery (two counts), kidnapping, and intimidation entered by the Washington County Court of Common Pleas following a jury trial.

{¶2}  On appeal, Fox contends that her convictions are against the manifest weight of the evidence because there is no physical evidence linking her to the crimes and because the testimony from an alleged accomplice identifying her as the perpetrator of the crimes should not be believed based on the accomplice's admission that he received favorable treatment from the State in order to testify. However, a conviction is not against the manifest weight of the evidence or otherwise improper because it is supported by the testimony of an accomplice. In addition, because the jury, as the trier of fact, was in the best position to observe the accomplice's

testimony and to evaluate his credibility, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. Thus, we reject the manifest weight argument.

{¶3} Fox next argues that trial counsel rendered ineffective assistance by failing to make a Crim.R. 29(A) motion for acquittal on the charges, i.e. counsel failed to challenge the sufficiency of the evidence supporting the convictions. However, the failure to raise a sufficiency argument at trial does not waive that argument on appeal. Moreover, in concluding that Fox's convictions were not against the manifest weight of the evidence, we necessarily concluded that sufficient evidence supported the convictions. Thus, such a motion would have been futile; and Fox cannot establish deficient performance or prejudice.

{¶4} Finding no merit to Fox's assignments of error, we affirm the judgment of the trial court.

## I. FACTS

{¶5} On January 30, 2014, Fox was indicted on two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), each felonies of the first degree, one count of kidnapping, in violation of R.C. 2905.01(A)(2) and (C)(1), a felony of the second degree, and one count of intimidation, in violation of R.C. 2921.04(B)(1), a felony of the third degree. The indictment arose from two incidents that occurred on December 26 and 27, 2013, in Marietta, Ohio.

{¶6} Fox pleaded not guilty to all counts of the indictment; and a jury trial was held on September 16, 2014. A review of the record and the transcript from the jury trial reveals the following facts pertinent to this appeal.

{¶7} Matthew Bailey testified that on December 26, 2013, a woman approached him when he was at an ATM in Marietta, held a knife to his chest, and demanded that he give her money. The perpetrator was wearing a black ski mask with holes for the eyes and mouth; but

Bailey could tell by the person's voice that she was a woman. Bailey described the woman as slender build, standing about five feet two or five feet four inches tall. Notably, Bailey testified that when he first arrived at the bank, he saw a red Chevy S-10 or similar type pickup truck sitting in the back parking lot. The woman took $260 and Bailey's wallet before leaving on foot.

{¶8}   Darrell Ashby testified that he is a general contractor who was remodeling the inside of a dental office building in Marietta on December 27, 2013. At about 6:45 a.m., Ashby saw a red pickup truck parked near the building. Soon thereafter, Ashby entered the building and a masked woman approached him with a knife and ordered him to come with her. Ashby testified that based on the perpetrator's voice, he believed the individual to be a woman. Ashby estimated that the woman stood four feet nine inches tall to five feet tall. The woman was wearing a toboggan type mask with holes cut in it. Ashby testified that the woman held the knife near his bellybutton.

{¶9}   The masked woman led Ashby by knifepoint to his car and demanded that he drive her to an ATM. The woman told Ashby that she wanted $300. Ashby complied with the woman's orders but was only able to retrieve $200 from the ATM. The woman then asked Ashby for his driver's license, telling him that if he informed authorities of the incident, she would come to his house and hurt his family. Ashby refused to turn over his license and the woman left with the $200.

{¶10}   Soon after the woman left Ashby, he saw a red, small-sized pickup truck leave the area. A heavyset bearded man drove the truck, and Ashby could see someone else ducked down in the passenger seat. While Ashby testified that he did not see the woman enter the truck, he indicated that he did not see anywhere else she could have gone. Ashby also testified that the truck was the same red pickup truck he had seen earlier in the morning at the dental office.

{¶11}  Officer Katherine Warden of the Marietta Police Department investigated the two incidents. On December 28, 2013, Warden received an anonymous tip stating that James Augenstein owned a red pickup truck matching the description of the suspicious vehicle and that he had a short, slender girlfriend who matched the description of the suspect. Warden testified that after receiving the anonymous tip she obtained a photograph of Augenstein and presented the photograph to Ashby in a photo line-up. Ashby picked Augenstein's photograph out of the line-up, and indicated that he was 75% certain that Augenstein was the driver of the red truck he saw leaving the scene. Warden and another officer then initiated contact with Augenstein. According to Warden, Augenstein admitted involvement in the crimes and identified Fox as the masked perpetrator.

{¶12}  Augenstein also testified at trial. Augenstein testified that he and Fox were in an "on again, off again", "boyfriend-girlfriend" type of relationship at the time of the incidents. He noted that Fox was about five foot, five foot one inches tall. He also testified that Fox had a thin build in December 2013.

{¶13}  Augenstein indicated that he owned a red 1992 Dodge Dakota pickup truck, and that he drove Fox to the area of the ATM at the time of the first robbery on December 26. He said that she left him for about five minutes, with a black toboggan on her head, and returned with a wallet and about $250 or $260 in cash. The two then spent the money on "pills and weed".

{¶14}  Augenstein also drove Fox, in his red pickup truck, to downtown Marietta on the morning of December 27. He indicated that he dropped Fox off near a business for a job interview, and then circled the block a few times. Eventually, he located Fox and picked her up near Fourth Street. The two then bought gas and went to Walmart to buy DVDs and clothes. Fox

paid for the gas and Walmart purchases with cash. Augenstein claimed that he did not know Fox intended to rob anyone when he dropped her off downtown.

{¶15} Augenstein also testified that he admitted to Officer Warden that he was involved in the crimes, and that Fox was the perpetrator of the crimes. Finally, Augenstein, who was also indicted on two counts for his involvement in the robberies, testified in great detail about his plea deal with the State. Specifically, Augenstein testified that in exchange for his testimony at Fox's trial and for his guilty plea to a reduced charge, the State agreed to dismiss the remaining count of his indictment. The State also agreed to recommend no more than four years imprisonment at Augenstein's sentencing hearing. The deal was conditioned upon him providing truthful testimony.

{¶16} Immediately following Augenstein's testimony, and again in the trial court's general jury instructions, the trial court gave an instruction on accomplice testimony. Specifically, the trial court instructed the jury that:

 [T]he testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self interest. But the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion and require that it be weighed with great caution. It is for you as jurors in the light of all the facts presented to you from the witness stand, to evaluate this testimony and determine its quality and worth or its lack of quality and worth.

{¶17} Ultimately, the jury found Fox guilty of all counts as charged in the indictment. A sentencing hearing was held on October 30, 2014, and Fox was sentenced to an aggregate nine-year term of imprisonment. Fox then filed a timely notice of appeal.

## II. ASSIGNMENTS OF ERROR

{¶18}   Fox assigns the following errors for our review:

1.  THE CONVICTIONS OF DEFENDANT-APPELLANT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

2.  TRIAL COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE UNDER THE OHIO AND UNITED STATES CONSTITUTIONS BY FAILING TO MOVE FOR ACQUITAL UNDER CRIMINAL RULE 29.

## III. LAW AND ANALYSIS

{¶19}   In her first assignment of error, Fox contends that her convictions are against the manifest weight of the evidence because there is no physical evidence linking her to the crimes and because Augenstein's testimony identifying her as the culprit of the crimes is not credible given his role as an accomplice and his plea deal with the State. In other words, Fox contends that the jury should not have believed Augenstein's testimony; and without his testimony the State failed to prove that she was the perpetrator of the crimes.

{¶20}   "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012–Ohio–5617, ¶ 60. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id.*, citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001), and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  This is so because "[t]he trier of fact 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Pippen,* 4th Dist.

Scioto No. 11CA3412, 2012–Ohio–4692, ¶ 31, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio

St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶21}  "Once the reviewing court finishes its examination, the court may reverse the

judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in

evidence, clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." (Quotations omitted.) *State v. Davis,* 4th

Dist. Ross No. 12CA3336, 2013–Ohio–1504, ¶ 14.

{¶22}  If the prosecution presented substantial evidence upon which the trier of fact

reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense

had been established, the judgment of conviction is not against the manifest weight of the

evidence. *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 16 (4th

Dist.). A reviewing court should find a conviction against the manifest weight of the evidence "

'only in the exceptional case in which the evidence weighs heavily against the conviction.' "

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20

Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Lindsey,* 87 Ohio St.3d

479, 483, 721 N.E.2d 995 (2000).

{¶23}  As an initial matter, we note that even when a conviction is based solely or

substantially upon accomplice testimony, it is not necessarily improper or against the manifest

weight of the evidence. *See State v. Jazdzewski*, 4th Dist. Washington No. 14CA15, 2015-Ohio-

2416, ¶¶ 42-44 (rejecting argument that defendant's conviction was improper inasmuch as it

rested completely on the testimony of an accomplice); *State v. Rougeau*, 2nd Dist. Montgomery

No. 21705, 2007-Ohio-2603, ¶ 9 ("Rougeau's conviction was well-supported by the evidence

and, even though it was substantially based upon accomplice testimony, it clearly was not against

the manifest weight of the evidence."); *State v. Taylor*, 10th Dist. Franklin No. 10AP-939, 2011-Ohio-3162, ¶ 24 ("As the Supreme Court of Ohio has recognized * * * a jury is not precluded from basing a criminal conviction on the uncorroborated testimony of an accomplice."); *State v. Pierce*, 9th Dist. Summit No. 27204, 2014-Ohio-5258, ¶ 9 ("The fact that an accomplice of the defendant has received leniency in exchange for his testimony does not, necessarily, make his testimony incredible.").

{¶24}  Here, both the State and defense counsel had the opportunity to examine Augenstein concerning his involvement as an accomplice, his agreement with the State, and any other bias he may have had in testifying at Fox's trial and in identifying Fox as the perpetrator of the crimes. Moreover, the trial court on more than one occasion gave the required cautionary instruction[1], warning the jury to view Augenstein's testimony with great suspicion and to weigh it with great caution given his status as an alleged accomplice. We also note that the jury was able to view Augenstein's direct and cross-examination, and was in the best position to observe his demeanor, gestures, and voice inflections. Thus, the jury had before it sufficient facts to ascertain Augenstein's credibility and to weigh it accordingly. We will not substitute our judgment for that of the jury.

---

[1] R.C. 2923.03, the complicity statute, states as follows:

> If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
> "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

R.C. 2923.03(D).

{¶25} Furthermore, the victims' description of the build and height of the suspect, and of the suspicious red pickup truck seen during both incidents, corroborates Augenstein's account that Fox was the perpetrator of the crimes and that he facilitated the crimes by driving her to and from the crime scenes. Augenstein's testimony was also consistent with the confession he gave to the investigating officer; and this fact was highlighted at trial.

{¶26} In sum, the jury was aware of the potential credibility concerns surrounding Augenstein's testimony, but, nonetheless, chose to believe his version of events. " '[A] conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.' " *State v. Fletcher*, 4th Dist. Lawrence No. 14CA14, 2015-Ohio-1624, ¶ 28, quoting *State v. Cooper,* 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493, ¶ 17 (4th Dist.). Reviewing the record as a whole, we cannot say that this is an exceptional case where the evidence weighs heavily against the convictions, that the trier of fact lost its way, or that a manifest miscarriage of justice has occurred. Accordingly, the verdict was not against the manifest weight of the evidence. Fox's first assignment of error is overruled.

{¶27} In her second assignment of error, Fox contends that her trial counsel rendered ineffective assistance.

{¶28} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14; *State v. Stout,* 4th Dist. Gallia No. 07CA5, 2008–Ohio–1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State*

*v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶ 14.

{¶29}   Fox contends that her trial counsel rendered ineffective assistance by not making a Crim.R. 29(A) motion for acquittal because there was no evidence identifying her as the perpetrator except for the testimony of Augenstein – an accomplice and co-defendant who had reached a plea agreement with the State. A motion for acquittal brought pursuant to Crim.R. 29(A) tests the sufficiency of the evidence presented at trial. *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996); *State v. Blevins*, 4th Dist. Scioto No. 10CA3353, 2011-Ohio-3367, ¶ 28. Under Crim.R. 29(A), the trial court must enter a judgment of acquittal when the State's evidence is insufficient as a matter of law to sustain a conviction.

{¶30}   "However, the failure to raise a sufficiency argument at trial does not waive that argument on appeal." *Blevins* at ¶ 29, citing *Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, at ¶ 13. "Moreover, '[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.' " *Id*., quoting *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.). " 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *Id*., quoting *Puckett* at ¶ 34.

{¶31}   Here, we have already determined, in resolving Fox's first assignment of error, that her convictions were not against the manifest weight of the evidence. Thus, any attempt by trial counsel to move for acquittal under Crim.R. 29(A) would have been futile. Accordingly, trial counsel's failure to make the Crim.R. 29(A) motion was not deficient; and we overrule Fox's second assignment of error. *See Blevins* at ¶ 30 ("Because the law does not require counsel to take a futile act, the failure to make the Crim.R. 29(A) motion was not deficient.").

IV. CONCLUSION

{¶32}   Having overruled both of Fox's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds that reasonable grounds exist for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Marie Hoover
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**