**[Cite as *State v. Bricher*, 2024-Ohio-394.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**

    **CASE NO. 10-23-02**

    **v.**

**ALAN J. BRICHER,**

    **O P I N I O N**

    **DEFENDANT-APPELLANT.**

---

**Appeal from Mercer County Common Pleas Court**
**Trial Court No. 22-CRM-069**

**Judgment Affirmed**

**Date of Decision: February 5, 2024**

---

**APPEARANCES:**

    *Peter Galyardt* **for Appellant**

    *Erin M. Minor* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Alan J. Bricher ("Bricher"), appeals the March 13, 2023 judgment entry issued by the Mercer County Court of Common Pleas. Following a two-day trial, a jury found Bricher guilty of seven offenses, and the trial court sentenced him to an aggregate prison term of eight to twelve years. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} Bricher and Zachary Frazier ("Frazier") were friends. They met each other in 2011 while in prison, and Bricher later married the mother of Frazier's oldest child. At least as of March 2022, Frazier was living on the couch at Bricher's residence (a trailer) in Coldwater, Ohio. Based on citizen complaints and other information, police suspected Bricher and Frazier were operating a drug-trafficking business and began surveilling Bricher's residence daily, starting in approximately February 2022. According to testimony at trial, Bricher was not employed during the course of the police surveillance.

{¶3} On May 12, 2022, officers watched Frazier leave the residence in a car registered to Bricher. Officers followed Frazier, who went to various locations in the Dayton area. As Frazier headed back towards Coldwater, officers saw him make two lane violations, so they conducted a traffic stop. After a narcotics dog alerted on the back passenger door of the car, officers conducted a search and found three

baggies containing fentanyl in the car. The combined weight of the substances containing fentanyl was approximately 44.84 grams. At the scene of the traffic stop, Frazier told officers that Bricher orchestrated the drug deal and there were more drugs—specifically, methamphetamine ("meth")—at Bricher's residence.

{¶4} Police officers arrested Frazier and then obtained a search warrant for Bricher's residence. During the subsequent search, officers found personal items belonging to Bricher (including a wallet containing his driver's license) alongside several items related to drugs and drug trafficking. This included a ledger with names and weights next to the names (including the name "Twan"); rolling papers; cut straws; several "stash containers," two of which had methamphetamine residue; and Narcan. Hidden behind a piece of drywall in another room, officers found two electronic scales, as well as a list of names and phone numbers. Officers also found $550 in cash, all in 50- or 100-dollar bills. Officers did not find anything in the residence that identified Frazier.

{¶5} When Frazier implicated Bricher on May 12 at the scene of the traffic stop (prior to his arrest), Frazier did not have any deal in place with the prosecutor's office. The same was true when Frazier spoke to officers a second time (now after his arrest), when he provided information consistent with what he had told officers at the scene of the traffic stop. At trial, Frazier testified he divulged this information because he realized at that point how much trouble he was in, knew he would be

"going away for a while" to prison, and he "wanted to get back to [his] kids" as quickly as possible. (Tr. at 269).

{¶6} As a result of the investigation and his admissions, Frazier was indicted on three counts. A few months later, he made an agreement with the prosecutor to testify as a State's witness at Bricher's trial and pleaded guilty to two counts (engaging in a pattern of corrupt activity and possession of fentanyl), while the State dismissed the third count (trafficking in a fentanyl-related compound). The trial court sentenced Frazier to 30 months in prison on the first count, to be served concurrently with his sentence of four-to-six years in prison on the possession count.

{¶7} On May 19, 2022, Bricher was indicted by the grand jury. The court held a jury trial from March 8 to March 9, 2023 on seven counts:

1. Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1), a second-degree felony;

2. Trafficking in a Fentanyl-Related Compound, in violation of R.C. 2925.03(A)(2), a first-degree felony;

3. Possession of a Fentanyl-Related Compound, in violation of R.C. 2925.11(A), a first-degree felony;

4. Aggravated Possession of Drugs, in violation of R.C. 2925.11(A), a fifth-degree felony;

5. Aggravated Possession of Drugs, in violation of 2925.11(A), a fifth-degree felony;

6. Possessing Criminal Tools, in violation of 2923.24(A), a fifth-degree felony; and

7. Illegal Use or Possession of Drug Paraphernalia, in violation of R.C. 2925.14(C)(1), a fourth-degree felony.

**{¶8}** Prior to trial, the State filed a Bill of Particulars. Regarding Count 1 (engaging in a pattern of corrupt activity), it expanded the date range to "on or about March 1, 2022 to May 12, 2022" and specified that "[t]he predicate offenses for this charge are Counts 2 and 3 of the Indictment, as well as uncharged instances of possession of and trafficking in methamphetamine and fentanyl in quantities constituting felonies of the fourth degree or more serious felonies."

**{¶9}** At trial, several witnesses testified for the State, including Frazier. According to Frazier, he would sell drugs for Bricher and also pick up drugs in Dayton for Bricher. This included the May 12, 2022 trip, when Bricher had asked him to do a drug run, gave him cash to buy fentanyl, and gave him the names of who to meet up with that day to get the drugs (one of which was Twan). Frazier testified he picked up two bags of drugs from Twan: a bulk amount and a small bag for his own personal use. Frazier paid Twan with the cash he had received from Bricher. Frazier used the fentanyl in the small bag then went to another location where he picked up two more bags of fentanyl from a different person, again paying for the drugs with the cash he had received from Bricher. He put the three remaining bags of fentanyl—which Frazier testified was "a lot more" than the amount he had personally used—underneath the backseat of his car. He was headed back to Bricher's residence when the police pulled him over for the lane violations.

**{¶10}** Frazier also testified at trial about the general nature of the drug runs he would do for Bricher. He would pick up drugs—sometimes meth, sometimes

-5-

fentanyl, sometimes both—at least twice a week. According to Frazier, Bricher would arrange the drug runs. Bricher would call the drug dealers; Bricher would give Frazier the money to buy the drugs; Bricher would tell Frazier who he would be meeting to obtain the drugs; and Bricher would let Frazier use Bricher's car to drive from Bricher's residence to meet the drug dealers. After completing the drug buys as Bricher instructed, Frazier would bring the drugs back to Bricher who would then weigh the drugs on a digital scale to verify they were the correct amount purchased. Bricher would usually store the drugs in his bedroom.

{¶11} Frazier testified he also sold both methamphetamine and fentanyl for Bricher. Frazier would watch Bricher measure the drugs for the buyers using a scale. Initially, drug buyers contacted Bricher, who would then have Frazier deliver the drugs to the buyer. Later, the buyers would directly contact Frazier, who would then go to Bricher and get the drugs in order to make the sale. Frazier would use one of Bricher's vehicles to make these drug deliveries.

{¶12} Regarding the quantity of methamphetamine he would typically pick up for Bricher, Frazier testified: "In the beginning [i.e., early March 2022], it was smaller amounts, like quarter pounds, half pounds, but towards the end [i.e., when he was arrested on May 12, 2022], it was more one or two pounds." (Tr. at 244-246). Concerning the quantity of fentanyl he would pick up, he testified: "It's like the meth, it started off slow, smaller, but towards the end, about maybe an ounce or more." (*Id.* at 244-245). In summary, "every week, twice per week, from early

-6-

March to when [he] got arrested in May," Frazier made drug runs arranged by Bricher with the amount of drugs increasing as time went on—but always in amounts that were much more than for personal use. (*Id.* at 245-246). With respect to drug costs and proceeds, Frazier testified a gram of methamphetamine would cost about $15; he would sell it for $20 or $25. (*Id.* at 257-58). There was no similar testimony regarding the cost or proceeds of the fentanyl.

{¶13} Also during the trial, the State played portions of phone calls made by Bricher while in jail awaiting trial. (*See* Tr. at 401-415; State's Exhibit 46). In one call, Bricher asked his wife to reach out to Frazier and tell him all will be forgiven if he "forgets" his statement to the police. In another call, Bricher stated he "just can't stop selling dope." (*Id.*).

{¶14} After the State rested its case, and the trial court denied Bricher's Crim.R. 29 motion, Bricher decided not to call any witnesses and rested his case. The judge gave the jury instructions. This included instructions regarding witness credibility and accomplice testimony. For example, the judge told the jury:

> As jurors, you are the sole judges of the facts, the credibility of the witnesses, and the weight to give to the testimony in evidence. To weigh the evidence, you must consider the credibility of each witness who testifies. You will use the tests of truthfulness which you use in your daily lives. These tests include * * * their intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony of that witness.
>
> * * *
>
> In this case, you heard the testimony of a codefendant, or someone who would be known as an accomplice. The testimony of an

accomplice does not become inadmissible because of their complicity, moral turpitude or self-interest, but the admitted or claimed complicity of a witness who testifies may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in light of all the facts presented to you from the witness stand, to evaluate the testimony of an accomplice and determine the quality and worth of that testimony, or the lack of quality and worth.

(Tr. at 456-458). This latter paragraph corresponds with a requirement in the complicity statute, R.C. 2923.03(D).

{¶15} The jury returned a verdict of guilty on all seven offenses. On March 10, 2023, the trial court held a sentencing hearing. The trial court found the second and third offenses merged. The judge sentenced Bricher to a term of eight to twelve years in prison for count two. The trial court ordered the terms of incarceration for the remaining offenses to run concurrently to this sentence. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶16} Bricher raises five assignments of error for our review:

### First Assignment of Error

**Alan Bricher's pattern-of-corrupt activity and first-degree-felony drug trafficking and possession findings of guilt are not supported by the manifest weight of the evidence. Fifth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution. Tr. 279, 284-287, 290-291, 410, 412, 416, 457-458.**

### Second Assignment of Error

**Alan Bricher's pattern-of-corrupt-activity conviction is not supported by sufficient evidence. Fifth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution. R.C. 2923.31(D); R.C. 2923.31(I)(2)(c); Crim.R. 29. Tr. 145-438, 439-444, 460-461.**

**Third Assignment of Error**

**The trial court committed plain error, thereby abusing its discretion, and violated Alan Bricher's constitutional due process rights when it provided an improper, inaccurate, and misleading jury instruction for the pattern-of-corrupt-activity charge. Fifth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution. R.C. 2923.31(E); R.C. 2923.31(I)(2)(c). Crim R. 52(B). Tr. 460-461.**

**Fourth Assignment of Error**

**Ohio's sentencing scheme of potentially enhanced penalties for qualifying first- and second-degree felonies as administratively determined by the Department of Rehabilitation and Correction, which was applied to Alan Bricher, is unconstitutional. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 5 and 14, Ohio Constitution. *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 39-53; *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 135, 729 N.E.2d 359 (2000). Mar. 13, 2023 Judgment Entry.**

**Fifth Assignment of Error**

**Alan Bricher's trial counsel rendered ineffective assistance of counsel, in violation of his constitutional rights. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). Sentencing Tr. 11-27.**

## III. DISCUSSION

{¶17} In his reply brief and at oral argument, Bricher withdrew his fourth assignment of error, in light of the Ohio Supreme Court's decision in *State v. Hacker*, --- Ohio St.3d ---, 2023-Ohio-2535. Therefore, we proceed with addressing the remaining assignments of error in the order presented.

### A. First Assignment of Error

{¶18} In the first assignment of error, Bricher argues the findings of guilt for the engaging-in-a-pattern-of-corrupt-activity offense (Count 1), drug trafficking offense (Count 2), and drug possession offense (Count 3) are not supported by the manifest weight of the evidence. According to Bricher, it was Frazier who committed all the criminal acts, asserting that "the evidence would look the exact same if [Frazier] coordinated all the acts and asked to borrow Mr. Bricher's car to perform them." (Appellant's Brief at 4). Bricher also says that, "while complicit liability requires only that Mr. Bricher solicited or procured the accomplice, the only evidence pointing toward that possibility is [Frazier's] word." (*Id.*)

#### 1. Standard of Review

{¶19} The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26. "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,'

should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### 2. Drug Trafficking (Count 2)

**{¶20}** Looking first to Count 2, drug trafficking is proscribed by R.C. 2925.03. The statute states, in relevant part:

> (A) No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.
>
> ***
>
> If the drug involved in the violation is a fentanyl-related compound * * * whoever violates division (A) of this section is guilty of trafficking in a fentanyl-related compound.
>
> ***
>
> If the amount of the drug involved * * * exceeds twenty grams but is less than fifty grams * * * trafficking in a fentanyl-related compound is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

R.C. 2925.03(A)(2), (C)(9).

**{¶21}** The trial judge instructed the jury regarding complicity to drug trafficking and explained: "The State of Ohio has presented a theory that the Defendant acted in complicity with the principal offender, Zachary Frazier, in commission of the offense of trafficking in a fentanyl-related compound." (Tr. at

-11-

461). The complicity statute states, in relevant part: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [s]olicit or procure another to commit the offense" or "[a]id or abet another in committing the offense." R.C. 2923.03(A)(1), (2); *see also State v. Lamarr*, 3d Dist. Logan No. 8-04-39, 2005-Ohio-6030, ¶ 8 ("[i]t is well-settled law that the prosecution may advance a complicity theory even though a criminal defendant was indicted as the principal offender"). The complicity statute also provides that someone who is guilty of complicity in the commission of an offense shall be punished as if he were a principal offender. R.C. 2923.03(F).

**{¶22}** Here, police officers found approximately 44.84 grams of substances containing fentanyl in a car registered to Bricher and driven by Frazier on May 12, 2022. Frazier's testimony demonstrates Bricher solicited him to procure the fentanyl, having asked Frazier to make the May 12, 2022 trip to Dayton, giving Frazier cash to buy the fentanyl, and directing Frazier to meet with Twan and another supplier to obtain the fentanyl. Frazier also testified that he picked up bags of substances containing fentanyl and paid for the drugs with the cash he had received from Bricher. In the phone recordings played for the jury, Bricher (1) asked his wife to reach out to Frazier and tell Frazier all would be forgiven if Frazier would forget his statements to the police and (2) said he can't stop selling dope.

**{¶23}** Even considering the concerns with accomplice testimony, the evidence weighing in favor of the jury's conclusion that Bricher trafficked in a

fentanyl-related compound "is weightier than the evidence that" he was not. *State v. Thompson*, 3d Dist. Seneca No. 13-17-26, 2018-Ohio-637, ¶ 100 (determining the jury's conclusion defendant-appellant was preparing cocaine for distribution was not against the manifest weight of the evidence). At the least, the evidence shows Bricher was complicit in Frazier knowingly transporting a controlled substance when he knew (or had reasonable cause to believe) the controlled substance was intended for sale or resale by Frazier or himself.

{¶24} Bricher's argument that Frazier's testimony was "the only evidence pointing toward" Bricher soliciting or procuring Frazier to commit the offense is incorrect. There was additional evidence. For example, Bricher's jail calls supported Bricher's knowledge and participation in the illegal drug transactions, as do the items found during the search of his residence. Moreover, "even when a conviction is based solely or substantially upon accomplice testimony, it is not necessarily improper or against the manifest weight of the evidence." *State v. Fox*, 4th Dist. Washington No. 14CA36, 2015-Ohio-3892, ¶ 23 (collecting cases); *see also State v. Taylor*, 10th Dist. Franklin No. 10AP-939, 2011-Ohio-3162, ¶ 24 ("[a]s the Supreme Court of Ohio has recognized * * * a jury is not precluded from basing a criminal conviction on the uncorroborated testimony of an accomplice"). The jury was made aware of the charges against Frazier, the plea agreement he had reached with the prosecutor in return for his testimony, the charges he was convicted of committing, and the sentence he received as a result of his conduct. He was cross-

examined by Bricher's counsel, and he testified about his involvement as an accomplice, his agreement with the prosecutor, and any bias he may have had. Additionally, the trial court gave cautionary instructions regarding Frazier's testimony, including how his testimony was "subject to grave suspicion" and must "be weighed with great caution." (Tr. at 457-58). "We also note that the jury was able to view [Frazier's] direct and cross-examination, and was in the best position to observe his demeanor, gestures, and voice inflections." *Fox*, 2015-Ohio-3892, at ¶ 24 (guilty verdict was not against the manifest weight of the evidence, despite the jury's reliance on the accomplice's testimony); *see also State v. Holland*, 3d Dist. Auglaize No. 2-03-27, 2004-Ohio-537, ¶ 3 (even when determining whether a conviction is against the manifest weight of the evidence, "[t]he fact-finder's verdict must be granted due deference as it is in a better position to determine credibility of the witnesses"). And, a jury can make reasonable inferences from the evidence. *Thompson*, 2018-Ohio-637, at ¶ 102.

**{¶25}** Having reviewed the record as a whole, we do not find the evidence weighs heavily against the conviction, that the trier of fact lost its way, or that a manifest miscarriage of justice occurred. "We will not substitute our judgment for that of the jury." *Fox*, 2015-Ohio-3892, at ¶ 24; *see also Taylor*, 2011-Ohio-3162, at ¶ 26-27 (where the jury was aware of the potential credibility concerns presented by an accomplice's testimony, the convictions were not against manifest weight of

the evidence). Therefore, we conclude Bricher's conviction for drug trafficking (count 2) is not against the manifest weight of the evidence.

### 3. Drug Possession (Count 3)

{¶26} Although the jury found Bricher guilty of both the second offense (trafficking in a fentanyl-related compound) and third offense (possession of a fentanyl-related compound), the trial court merged those offenses and sentenced Bricher only on the trafficking offense. Because we have concluded that Bricher's conviction on the trafficking offense was not against the manifest weight of the evidence, an erroneous verdict on the merged count (possession) would be harmless. *State v. Smith*, 4th Dist. Scioto No. 20CA3934, 2022-Ohio-371, ¶ 51 (where defendant-appellant was found guilty of both drug trafficking and drug possession offenses, "if sufficient evidence supports appellant's trafficking conviction, and if the conviction is not against the manifest weight of the evidence, an erroneous verdict on the merged [drug possession] count would be harmless"); *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-2897, ¶ 70 ("[w]hen a trial court dispatches with a count through merger, any error in the jury's verdict on the merged count is rendered harmless beyond a reasonable doubt"). Therefore, it is unnecessary for us to analyze his manifest-weight-of-the-evidence argument with respect to the possession offense. *E.g.*, *Smith* at ¶ 69-72 (overruling assignment of error without analyzing the manifest-weight-of-the-evidence argument concerning the merged drug possession offense, where the appellate court found the drug

-15-

trafficking conviction was not against the manifest weight of the evidence); *State v. Alexander*, 4th Dist. Adams No. 21CA1144, 2022-Ohio-1812, ¶ 38.

### 4. Engaging in a Pattern of Corrupt Activity (Count 1)

{¶27} Finally, in relation to the engaging-in-a-pattern-of-corrupt-activity offense (count 1), the applicable statute reads, "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C. 2923.32(A)(1).

{¶28} The term "enterprise" is broadly defined to include "any individual, sole proprietorship, partnership, * * * or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). An enterprise "includes illicit as well as licit enterprises." *Id.* The phrase "pattern of corrupt activity" is defined as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). And, the term "corrupt activity" includes:

> engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * conduct constituting * * * [a]ny violation of section * * * 2925.03 * * * of the Revised Code [or] any violation of section 2925.11 of the Revised Code that is a felony of the first, second, third, or fourth degree * * *, when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other

benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds one thousand dollars, or any combination of violations described in division (I)(2)(c) of this section when the total proceeds of the combination of violations, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds one thousand dollars[.]

R.C. 2923.31(I)(2)(c). Thus, both the drug trafficking and the drug possession statutes are included as potential predicate offenses in the definition of corrupt activity.

**{¶29}** Additionally, there is a monetary threshold for violations to be considered corrupt activity. R.C. 2923.31(I)(2)(c). The violation or combination of violations must involve proceeds, payments, claims, or value that exceeds the statutory threshold amount of $1,000. *Id.* For example, one way in which drug trafficking in violation of R.C. 2925.03 can constitute a corrupt activity is when "'the total proceeds of a violation of that statute or a combination of violations of that statute'" exceed $1,000. *State v. Kolle*, 4th Dist. Pickaway No. 21CA8, 2022-Ohio-4322, ¶ 38, quoting *State v. Liggins*, 6th Dist. Sandusky No. 16 CAS 32, 2018-Ohio-243, ¶ 23; *see also* R.C. 2923.31(I)(2)(c). "Thus, individual transactions can be aggregated to form a single corrupt activity." *Kolle* at ¶ 38. "However, 'in order for the state to establish a pattern of corrupt activity it must produce evidence of at least two corrupt activities where the proceeds of each corrupt activity exceeded

$1,000.'" *Id.*, quoting *Liggins* at ¶ 23. Additionally, "[c]ourts have held that 'offenses committed by accomplices will qualify as predicate acts sufficient to convict other participants in the enterprise of engaging in a pattern of corrupt activity.'" *State v. Donaldson*, 2d Dist. Montgomery No. 29473, 2023-Ohio-234, ¶ 24, quoting *State v. Barnes*, 6th Dist. Wood No. WD-7-024, 2008-Ohio-1854, ¶ 23.

**{¶30}** Here, evidence at trial showed Bricher was associated in an illicit enterprise with Frazier that involved obtaining, transporting, and selling illegal drugs. Yet, we agree with Bricher that any fentanyl-related incidents—including the one on May 12, 2022—cannot qualify as "corrupt activity" under the statute. This is because no evidence concerning the value of the fentanyl was presented at trial.

**{¶31}** However, as set forth above, the Bill of Particulars filed by the State not only identified Counts 2 and 3 as being predicate offenses for Count 1, but it also identified "uncharged instances of possession of and trafficking in methamphetamine * * * in quantities constituting felonies of the fourth degree or more serious felonies" that took place between March 1, 2022 to May 12, 2022. *See State v. Thomas*, 3d Dist. Allen No. 1-16-36, 2017-Ohio-4356, ¶ 66-67 (upholding the sentence for engaging in a pattern of corrupt activity where the bill of particulars "specifically said that the predicate offenses were those charged in Counts One, Two, and Three, as well as uncharged instances of possession of and trafficking in marijuana in quantities constituting at least felonies of the third degree"); *State v.*

-18-

*Siferd*, 3d Dist. Hancock No. 5-02-09, 2002-Ohio-6801, ¶ 25 (no plain error where State used unindicted offenses as predicate offenses for the R.C. 2923.32(A) violation and appellant-defendant did not object when "trafficking, funding, and possession were identified as the predicate offenses in the state's trial brief or when the jury was instructed as to these offenses").

**{¶32}** While there was no testimony regarding the value of the fentanyl that was purchased, possessed, or trafficked, the same is not true regarding the methamphetamine. We note that methamphetamine is a schedule II controlled substance, and its bulk amount is three grams or more. *See* 21 C.F.R. § 1308.12; R.C. 2925.01(D)(1)(g); *State v. Rhodus*, 12th Dist. Butler No. CA2023-03-029, 2023-Ohio-3678, ¶ 19.

**{¶33}** At the trial, the State proved beyond a reasonable doubt that Bricher at least twice violated R.C. 2925.03(A)(2) during the relevant timeframe, in quantities of methamphetamine that constituted at least felonies of the fourth degree. A forensic scientist for the Ohio Bureau of Criminal Investigations testified that methamphetamine is a schedule II controlled substance. (Tr. at 316). Additionally, an officer testified that the police found two stash containers containing methamphetamine residue during the search of Bricher's residence. (*Id.* at 172; *see also id.* at 332, 336). More importantly, Frazier testified he would pick up, transport, and sell methamphetamine for Bricher during the relevant time frame. (*Id.* at 243-244, 254). Frazier also testified about the amounts and value of the trafficked

methamphetamine. Specifically, Frazier testified: "In the beginning [i.e., early March 2022], it was smaller amounts, like quarter pounds, half pounds, but towards the end [i.e., when he was arrested on May 12, 2022], it was more one or two pounds." (*Id.* at 244-246). Therefore, at a minimum, Frazier acquired and transported for sale or resale: (1) a quarter pound of methamphetamine during the early portion of the enterprise; and (2) a pound of methamphetamine during the latter portion of the enterprise. This was done within the context of a pattern of Bricher and Frazier working together to acquire, transport, and sell drugs at least twice per week, continuously every week, from early March to May 12, 2022, when Frazier was arrested.

{¶34} Frazier testified a gram of methamphetamine would cost about $15 and he would sell it for $20 or $25. (*Id.* at 257-58). Given the large quantities of methamphetamine purchased by Frazier and then sold by him and Bricher, a jury could easily conclude that the value of the contraband involved in those two separate violations of R.C. 2925.03 each exceeded $1,000. R.C. 2923.31(I)(2)(c).

{¶35} The quantities of methamphetamine in these two violations also each qualify as (at least) fourth-degree felonies, thus meeting the "corrupt activity" threshold for seriousness of the incidents. *See* R.C. 2923.31(I)(2)(c). Violating the drug trafficking statute, when the drug involved "is any compound, mixture, preparation, or substance included in schedule I or schedule II," is a felony of the fourth degree, regardless of how small a quantity is trafficked. R.C.

2925.03(C)(1)(a). The seriousness of the drug trafficking violation increases as the quantity of the controlled substance increases. R.C. 2925.03(C)(1)(c), (d), (e), (f).

**{¶36}** The evidence presented at trial established that Bricher solicited Frazier to engage in multiple violations of R.C. 2925.03 involving methamphetamine. The evidence established two or more separate instances of corrupt activity with a value possessed, sold, or purchased exceeding $1,000 during the time frame between March 1, 2022 and May 12, 2022. *See* R.C. 2923.31(I)(2)(c); R.C. 2925.03(A)(2), (C)(1).

**{¶37}** In conclusion, evidence at trial demonstrated that Bricher participated in the affairs of his illicit enterprise with Frazier through a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1). Bricher's conviction for engaging-in-a-pattern-of-corrupt-activity is not against the manifest weight of the evidence. *See State v. Smale*, 3d Dist. Marion No. 9-17-44, 2018-Ohio-5218, ¶ 20-22 (conviction for violating R.C. 2925.03(A)(2) was not against the manifest weight of the evidence where the jury heard testimony regarding appellant's complicit trafficking conduct from appellant's roommate); *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210, ¶ 106-07 (conviction for engaging-in-a-pattern-of-corrupt-activity not against manifest weight of the evidence where the jury heard testimony and recorded phone calls that offered credible evidence defendant-appellant trafficked in drugs on multiple occasions); *State v. Jazdzewski*, 4th Dist. Washington No. 14CA15, 2015-Ohio-2416, ¶ 42, 44 (rejecting appellant's argument that his

conviction for engaging-in-a-pattern-of-corrupt-activity was improper because it rested on the testimony of an accomplice).

**{¶38}** Bricher's first assignment of error is overruled.

### B. Second Assignment of Error

**{¶39}** In the second assignment of error, Bricher argues the trial court erred in overruling his Crim.R 29 motion on Count 1. He contends "the prosecution failed to present sufficient evidence on the pattern-of-corrupt-activity offense in two ways: (1) the threshold dollar amount, and (2) two incidents of corrupt activity as statutorily defined." (Appellant's Brief at 6).

#### 1. Standard of Review

**{¶40}** "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995) and *Thompkins*, 78 Ohio St.3d at 386. A sufficiency challenge disputes whether a party met its burden of production at trial. *Messenger*, 2022-Ohio-4562, at ¶ 26. "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Tenace* at ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Thus, "[i]n assessing the sufficiency of the evidence, we do not

resolve evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 3d Dist. Allen No. 1-22-27, 2023-Ohio-2193, ¶ 26; *see also Jenks* at 279.

### 2. Analysis

**{¶41}** For the reasons set forth in our analysis of the first assignment of error, we determine that a rational trier of fact could have found the essential elements of R.C. 2923.32(A)(1) proven beyond a reasonable doubt. *See State v. Brownlow*, 3d Dist. Allen No. 1-02-95, 2003-Ohio-5757, ¶ 28-33 (trial court did not err in overruling defendant-appellant's Crim.R. 29 motion for acquittal of the R.C. 2923.32(A) count involving drug transactions).

**{¶42}** Concerning his first argument in support of this assignment of error, Bricher contends "the prosecution presented no evidence regarding the proceeds of the fentanyl from the traffic stop that supported the drug-trafficking offense." (Appellant's Brief at 6). We agree, but, as shown above, that does not conclude our analysis because there were other potential predicate offenses to support the pattern-of-corrupt-activity conviction.

**{¶43}** In his second argument in support of this assignment of error, Bricher says, "[e]xcept for the possession of fentanyl, which was merged into the drug-trafficking offense, the drug-possession offenses in this case were fifth-degree felonies." (Appellant's Brief at 7). Again, as shown above, that does not conclude our analysis because it ignores other potential predicate offenses to support the

pattern-of-corrupt-activity conviction, namely trafficking in methamphetamine in quantities constituting felonies of the fourth degree or more serious felonies.

{¶44} The trial court did not err in overruling Bricher's Crim.R. 29 motion concerning the pattern-of-corrupt-activity offense. Bricher's second assignment of error is overruled.

### C. Third Assignment of Error

{¶45} In the third assignment of error, Bricher argues the trial court committed plain error "when it provided an improper, inaccurate, and misleading jury instruction for the pattern-of-corrupt activity charge." (Appellant's Brief at 8). Bricher points to alleged errors (1) in failing to define the threshold dollar amount for drug trafficking and (2) in failing to provide an accurate statutory definition regarding drug possession. (*Id.*).

### 1. Standard of Review

{¶46} Bricher's counsel did not object to the trial court's jury instructions. Therefore, our review is limited to plain error. Crim.R. 30(A) ("[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection"); Crim.R. 52(B); *State v. Daboni*, 4th Dist. Meigs Nos. 18CA3, 18CA4, and 18CA5, 2018-Ohio-4155, ¶ 64 (because appellant did not object at trial, appellate court reviewed only for plain error the trial court's failure to include language in jury instructions regarding the

$1,000 monetary threshold for the engaging-in-a-pattern-of-corrupt-activity charge).

**{¶47}** To qualify for plain-error relief, the appellant must establish: (1) occurrence of an error, i.e., a deviation from a legal rule; (2) the error was plain, i.e., it was an obvious defect in the trial proceedings; and (3) the error affected the appellant's substantial rights, meaning the error "must have affected the outcome of the trial." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. Yet, even when an appellant establishes those three prongs, "[n]otice of plain error under CrimR. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *see also Morgan*, 2017-Ohio-7565, at ¶ 37; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 23 ("even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it").

### 2. Applicable Law

**{¶48}** "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged." *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980). For example, "where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." *Id.* However,

"a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not per se constitute plain error nor does it necessarily require reversal of a conviction." *Id.* at 154. "Only by reviewing the record in each case can the probable impact of such a failure be determined, and a decision reached as to whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice." *Id.*

{¶49} Therefore, "[w]here a trial court's failure to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged is asserted to be plain error under Crim.R. 52(B), the reviewing court must examine the record in order to determine whether that failure may have resulted in a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus. For example, the error can be overcome if there was no scenario in which the jury could have reasonably concluded, based on the evidence, that the State did not prove the element(s) at issue—such as where the evidence on that element is undisputed. *See, e.g., id.* at 152, 155 (reversing finding of plain error in the trial court's failure to instruct the jury on the degree of mental culpability required to find criminal liability under the endangering children statute); *State v. Daley*, 3d Dist. Seneca No. 13-13-26, 2014-Ohio-2128, ¶ 58 ("[w]e do not find that a manifest miscarriage of justice occurred [despite the jury instructions lacking an essential element of the offense,

i.e., the victim being under the age of 13,] because our review of the record discloses that the age of the victim was not a disputed fact in this case").

### 3. Analysis

**{¶50}** We initially address the second alleged error: failing to provide an accurate statutory definition regarding drug possession. As shown above, it was unnecessary to consider potential predicate offenses of drug possession to convict Bricher on Count 1 (the charge at issue in this assignment of error). Instead, instances of drug trafficking in methamphetamine supported the conviction. Therefore, we disagree with Bricher that, "[h]ad the instruction detailed that drug possession had to be a first-, second-, third-, or fourth-degree felony to constitute a corrupt activity, Mr. Bricher would not have been convicted of the pattern-of-corrupt-activity offense because the drug-possession offenses at issue were fifth-degree felonies." (Appellant's Brief at 9). This alleged error in the statutory definition regarding drug possession does not qualify for plain-error relief.

**{¶51}** We next turn to the failure to define the threshold dollar amount for drug trafficking as a predicate offense to engaging in a pattern of corrupt activity. As explained above, the definition of "corrupt activity" sets forth a monetary threshold in order for a violation to be considered "corrupt activity" under the engaging-in-a-pattern-of-corrupt-activity statute. R.C. 2923.32(A)(1); R.C. 2923.31(I)(2)(c). To meet the definition of "corrupt activity," the violation or combination of violations must involve proceeds, payments, claims, or value that

exceeds the statutory threshold amount of $1,000. *Id.* Bricher is correct that the trial court here did not instruct the jury regarding the requisite monetary threshold.[1] R.C. 2923.32(A)(1); R.C. 2923.31(I)(2)(c); *see also Liggins*, 2018-Ohio-243, at ¶ 23 (referring to the "exceeds one thousand dollars" portion of the corrupt activity definition as an element of an engaging-in-a-pattern-of-corrupt-activity offense). The State concedes this error, but argues it was harmless—asserting that, "had the trial court provided a complete jury instruction, the outcome would have been the same." (Appellee's Brief at 19.)

**{¶52}** In line with the Ohio Supreme Court's guidance in *Adams*, because Bricher failed to object, "we must examine the record and we will only reverse the conviction if we decide that 'substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice.'" *Daley*, 2014-Ohio-2128, at ¶ 58, quoting *Adams* at 154. The burden "is on [Bricher] to show the irregularity affected the outcome." *State v. Bethel*, 4th Dist. Jackson No. 13CA11,

---

[1] The trial court instructed the jury, in relevant part:

> The first offense is engaging in a pattern of corrupt activity. And the Defendant is charged with one count of engaging in a pattern of corrupt activity. Before you can find the Defendant guilty of this offense, you must find, beyond a reasonable doubt, that the Defendant, on or about March 1st * * * 2022, to May 12, 2022, and in Mercer County, Ohio, while associated with an enterprise, did conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity.
> * * *
> Pattern of corrupt activity means two or more incidents of corrupt activity that are related to the affairs of the same enterprise, that are not isolated, and are not so closely related to each other and connected in time in place to constitute a single event. Corrupt activity means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing or intimidating another person to engage in a violation, among other offenses, such as trafficking in drugs and felony possession of drugs.

(Tr. at 459-461). Among other things, the instructions also provided definitions for "enterprise," "conduct," and "participate," as well as instructions regarding drug trafficking. (*Id.* at 459-464).

2014-Ohio-3861, ¶ 11. We also construe the State's harmless error argument as an effort to show the omission "did not affect a substantial right, i.e. it was not outcome determinative." *Id.*

**{¶53}** A similar scenario was presented to the Fourth District Court of Appeals in *Daboni*. There, "the trial court's overall instruction and specific definition of corrupt activity provided to the jury did not include language regarding the monetary threshold of one thousand dollars that must be proven." *Daboni*, 2018-Ohio-4155, at ¶ 63. Thus, "the trial court's instruction did contain an error," but the defendant-appellant did not object to the court's jury instructions. *Id.* at ¶ 64, 66. At trial, one of defendant-appellant's drug "runners" testified to the amount of heroin he would sell for defendant-appellant and the typical selling price for the heroin he sold. *Id.* at ¶ 70. The appellate court explained that, "[e]mploying simple math and applying it to the testimony, the jury could not have concluded that the State failed to prove the monetary threshold amount of $1,000.00 required by the statute." *Id.* Therefore, the appellate court could not "conclude that the trial court's failure to instruct the jury on the required monetary threshold resulted in plain error as to the first count of engaging in a pattern of corrupt activity." *Id.*

**{¶54}** Here, as in *Daboni*, the omission in the jury instructions did not result in a manifest miscarriage of justice. The evidence concerning both the value of the methamphetamine and the amount involved in the two incidents referenced in the first assignment of error was neither challenged nor in dispute at trial. As further

explained in our analysis of the first assignment of error, applying the use of common sense and simple math to Frazier's undisputed testimony concerning the amounts and value of the methamphetamine, there was no scenario in which the jury could have reasonably concluded the State did not prove the requisite monetary threshold to constitute two separate incidents of "corrupt activity" for the engaging-in-a-pattern-of-corrupt-activity offense. We find the incomplete jury instruction did not result in substantial prejudice to Bricher. *See Adams*, 62 Ohio St.2d at 154; *Daboni*, 2018-Ohio-4155, at ¶ 63-70; *State v. Keeling*, 1st Dist. Hamilton No. C-010610, 2002-Ohio-3299, ¶ 28 (where only one person provided testimony concerning the events surrounding the offense, defendant-appellant did not dispute that person's version of the events (only his participation in them), and that person's testimony established the offense's element at issue, the failure to instruct the jury on that element was harmless because "[u]nder no possible scenario could the jury have rationally found" the element had not been established).

{¶55} Bricher's two cited cases are distinguishable. In *Bethel*, "the court's instructions were incorrect because they omitted the element 'by means of a deadly weapon or dangerous ordnance'" for a felonious assault offense. *Bethel*, 2014-Ohio-3861, at ¶ 9-10. At the trial in that case, the State presented evidence that the defendant attacked the victim with a dangerous weapon and caused injury, while the defendant testified he never had the dangerous weapon and denied hitting the victim with any weapon. *Id.* at ¶ 13. "Thus, whether [defendant-appellant] used a deadly

weapon was very much in dispute between the parties," and "the court's failure to submit that essential element to the jury caused a manifest injustice because it deprived [defendant-appellant] of his right to have the jury decide that issue beyond a reasonable doubt." *Id.* Bricher's other cited case is distinguishable too. In *Chamblin*, the appellate court did not apply the legal standards set forth in *Adams* for analyzing the error. *State v. Chamblin*, 4th Dist. Adams No. 02CA753, 2004-Ohio-2252. Additionally, the appellate court in *Chamblin* determined the trial court gave inadequate jury instructions on the underlying predicate offense that was the only potential second predicate offense to support the engaging-in-a-pattern-of-corrupt-activity conviction. *Id.* at ¶ 24-29. Among other distinguishing factors, the predicate offenses here were drug trafficking offenses, but Bricher does not challenge the drug trafficking instructions. Ultimately, we disagree with Bricher's assertion that, "[w]ithout the faulty instruction, there could be no guilty finding because there were not two incidents of corrupt activity as statutorily defined, and, therefore, no pattern." (Appellant's Brief at 10).

{¶56} Bricher's third assignment of error is overruled.

### D.     Fifth Assignment of Error

{¶57} In the fifth assignment of error, Bricher contends his trial counsel rendered ineffective assistance of counsel when she (1) failed to challenge the constitutionality of Ohio's sentencing scheme, and (2) failed to object to the jury instructions for the pattern-of-corrupt-activity offense. (Appellant Brief at 17).

### 1.    Standard of Review and Applicable Law

**{¶58}** To establish ineffective assistance of counsel, the appellant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 118.

**{¶59}** With respect to the first requirement, "[i]n order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment." *State v. Houston*, 3d Dist. Shelby No. 17-10-06, 2010-Ohio-6070, ¶ 35, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." *Id.*, citing *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). "Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance." *Id.* at ¶ 36, citing *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). "Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client." *Id.*

**{¶60}** Regarding the second requirement, "prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *Id.*, quoting *State v. Bradley*, 42 Ohio St.3d 136, 141-42, 538 N.E.2d 373 (1989). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142.

### 2. Analysis

**{¶61}** Concerning Bricher's first contention, in accordance with his withdrawal of the fourth assignment of error on the same issue and the Ohio Supreme Court's recent ruling in *Hacker*, 2023-Ohio-2535, his trial counsel did not render ineffective assistance of counsel. Addressing his second contention, in accordance with our assessment of the third assignment of error on the same issue, his trial counsel did not render ineffective assistance of counsel. Bricher has not shown any prejudice as a result of counsel's alleged deficient performance. Bricher's fifth assignment of error is overruled.

## IV. CONCLUSION

**{¶62}** For the foregoing reasons, Bricher's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Mercer County Court of Common Pleas.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/hls**