[Cite as *State v. Lewis*, 2025-Ohio-2486.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

  PLAINTIFF-APPELLEE,

    CASE NO. 9-24-52

 v.

LARRY C. LEWIS, JR.,

    OPINION AND
    JUDGMENT ENTRY

  DEFENDANT-APPELLANT.

---

**Appeal from Marion County Common Pleas Court**
**General Division**
**Trial Court No. 23-CR-510**

**Judgment Affirmed**

**Date of Decision: July 14, 2025**

---

APPEARANCES:

 *April F. Campbell* **for Appellant**

 *Allison M. Kesler* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Larry C. Lewis, Jr. ("Lewis"), appeals from the October 25, 2024 judgment of the Marion County Court of Common Pleas, following a jury trial and sentencing. Lewis argues his convictions for drug trafficking and drug possession are legally insufficient and against the manifest weight of the evidence. For the reasons that follow, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶2} On December 13, 2023, the Marion County Grand Jury indicted Lewis on five charges:

> 1. Count One, trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(2), (C)(9)(f);
>
> 2. Count Two, possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), (C)(11)(e);
>
> 3. Count Three, trafficking in cocaine, in violation of R.C. 2925.03(A)(2), (C)(4)(f);
>
> 4. Count Four, possession of cocaine, in violation of R.C. 2925.11(A), (C)(4)(e); and
>
> 5. Count Five, having weapons while under disability, in violation of R.C. 2923.13(A)(3), (B).

The case proceeded to trial on October 8 and 9, 2024.

{¶3} During the trial, various members of a drug task force testified about executing a search warrant on November 28, 2023 at a residence located in the city of Marion, Ohio. Detective Matthew Creps testified that the unattached garage on the property had security cameras surrounding its exterior, which indicated to

Detective Creps that something in the garage needed to be protected. Upon obtaining the search warrant and entering the garage, the task force located digital scales, numerous open boxes of sandwich baggies, and a TV screen that showed views from all surveillance cameras on the garage's exterior. Detective Creps testified that, based on his training and experience as a narcotics detective, "it's very common for drug dealers to weigh their drugs, then they secure that drug in a sandwich baggie." (Trial Tr. at 134).

{¶4} Inside the property's residence, the officers located Lewis and Richa Markley ("Markley"). According to Detective Creps, Lewis said that he lived at the residence, there were no drugs in the house, and he was unaware of any guns in the house. Lewis identified one of the bedrooms as his own room. In that bedroom, the task force located a large baggie containing yellow pills, suspected fentanyl in a baggie within the large baggie, and suspected cocaine in another baggie within the large baggie. Also in that bedroom, the task force found unopened mail addressed to Lewis at that residence, a framed picture on the wall of Lewis and a child, and a semi-automatic pistol in the closet.

{¶5} Detective Aaron Marburger testified that he searched the closet in Lewis' bedroom and located the gun mentioned by Detective Creps. He also located a distinctive black jacket, which contained large bundles of cash hidden in one of its pockets. Detective Marburger later found photos on social media of Lewis

wearing the same distinctive black jacket. Another member of the task force testified to finding a money counter in the same bedroom.

{¶6} Other testimony during the trial addressed the testing of two packages Detective Creps had identified as being recovered from Lewis' bedroom. A forensic scientist responsible for drug analysis at the Mansfield Police Department Forensic Science Laboratory tested the two packages. The forensic scientist testified that one package contained 38.69 grams of fentanyl, a Schedule II controlled substance, and the other package contained 45.32 grams of cocaine, also a Schedule II controlled substance. Detective Creps testified that one gram of fentanyl would sell for around $100 in the Marion community and one gram of cocaine would likewise sell for $100, so the value of the two packages were approximately $3,800 and $4,500, respectively. According to Detective Creps, fentanyl and cocaine are typically sold on the street in much smaller, separate amounts, not the large amounts contained in the packages found in the residence.

{¶7} Additionally, the DNA analyst for the laboratory testified about testing the two packages for the presence of DNA. According to her analysis, the baggie of fentanyl contained a DNA profile that was a mixture of two individuals. To a reasonable degree of scientific certainty, Markley was the source of the major DNA profile and Lewis was the source of the minor DNA profile. Additionally, Markley and Lewis could not be excluded as contributors to the DNA found on the baggie of

cocaine, and the probability for a randomly-selected individual to be included as a possible contributor to that DNA was 1 in 6.5 quadrillion.

{¶8} After the State concluded its evidence, defense counsel moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. The jury subsequently returned guilty verdicts on all counts. At the sentencing hearing, the trial court found that Counts One and Two were allied offenses that merged. The State elected to proceed to sentencing on Count One, the trafficking offense. Additionally, the trial court found that Counts Three and Four were allied offenses that merged. The State elected to proceed to sentencing on Count Three, the trafficking offense. The trial court then sentenced Lewis to 11 to 16.5 years in prison on Count One, 11 to 16.5 years in prison on Count Three, and 36 months in prison on Count Five—to be served consecutive to each other for an aggregate prison sentence of 25 to 30.5 years. The court also ordered that $7,562 seized at the time of Lewis' arrest be applied to a mandatory drug fine on Count 1. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶9} Lewis raises two assignments of error for our review:

**First Assignment of Error**

**The State's evidence that Lewis possessed and trafficked the drugs he was charged for (Counts one through four) was legally insufficient as a matter of law.**

**Second Assignment of Error**

**Because the evidence weighed manifestly against convicting Lewis of possessing or trafficking the drugs, his conviction should be reversed.**

## III. DISCUSSION

{¶10} We initially highlight that Lewis was not actually *convicted* of Counts Two or Four (the possession charges) because those charges merged with Counts One and Three, respectively, as allied offenses of similar import for purposes of sentencing. *State v. Whitfield*, 2010-Ohio-2, ¶ 12, 16, 24 (crimes found to be allied offenses merge into a single conviction for sentencing; a "conviction" consists of a guilty verdict *and* the imposition of a sentence or penalty). Because we affirm his convictions on Counts One and Three through our analysis below, we need not address any arguments challenging the sufficiency or weight of the evidence regarding the jury's findings of guilt as to the possession charges, i.e., Counts Two and Four.[1] *State v. Bender*, 2024-Ohio-1750, ¶ 14-15 (3d Dist.); *State v. Risner*, 2022-Ohio-3877, ¶ 11 (3d Dist.) (when allied offenses are merged for purposes of sentencing and there is sufficient evidence to support the offense elected by the State for sentencing, the appellate court need not consider the sufficiency or weight of the evidence on the unelected allied offense because any error would be harmless beyond a reasonable doubt).

---

[1] Lewis does not challenge his conviction for Count Five.

### A.    First Assignment of Error

{¶11} In the first assignment of error, Lewis argues there was insufficient evidence to support the trafficking and possession convictions.  His overarching argument is that the evidence demonstrates his co-defendant, Markley, was the trafficker of the drugs found in their shared residence, not Lewis.  He asserts that the drugs were found in a home for which he was not the leaseholder, Markley was the major contributor of the DNA evidence, and Markley already pleaded guilty to trafficking and possessing the drugs.

### 1.    Standard of Review and Applicable Law

{¶12} Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Dent*, 2020-Ohio-6670, ¶ 15.  Thus, our review is de novo. *Id.*  A sufficiency challenge disputes whether a party met its burden of production at trial.  *State v. Messenger*, 2022-Ohio-4562, ¶ 26.  "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *Dent* at ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses."  *State v. Jackson*, 2023-Ohio-2193, ¶ 26 (3d Dist.); *see also Jenks* at 279.

**{¶13}** Counts One and Three each allege trafficking in a controlled substance. The trafficking statute under which Lewis was charged provides, in relevant part:

> (A) No person shall knowingly . . . (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

R.C. 2925.03(A)(2).

### 2. Analysis

**{¶14}** Despite Lewis' arguments, the evidence was legally sufficient to sustain the jury's verdicts. As shown above, the State presented a significant amount of circumstantial evidence to support the trafficking charges against Lewis. In the garage, the task force located digital scales, numerous open boxes of sandwich baggies, and a TV screen showing the views from all surveillance cameras on the garage's exterior. In Lewis' bedroom, the task force located a money counter, a large amount of cash in his distinctive jacket, and a firearm. Additionally, relatively large amounts of what was confirmed by the forensic scientist to be fentanyl and cocaine were located in Lewis' bedroom. *See State v. Mobley*, 2023-Ohio-2229, ¶ 23, 25 (9th Dist.) (officer's description of the large amount of drugs possessed by defendant and his testimony that he did not believe such an amount would be for personal use contradicted defendant's assertion the drugs were for personal use).

Additionally, Lewis was the source of the minor DNA profile on the package containing fentanyl and he could not be excluded as a contributor to the DNA found on the package containing cocaine. *See State v. James*, 2020-Ohio-4289, ¶ 87, 93 (7th Dist.) (it was reasonable for the jury to believe defendant's DNA was found at a particular location because he was one of the shooters at that location).

{¶15} Circumstantial evidence is not less probative than direct evidence. *State v. Dunn*, 2024-Ohio-5742, ¶ 32. In fact, circumstantial evidence may be even more reliable than direct evidence in some instances. *Id.* Moreover, jurors are free to rely on their common sense and experience in drawing reasonable inferences from the evidence. *Id.* We have explained that circumstantial evidence has long been used to successfully support drug trafficking convictions. *State v. Carpenter*, 2019-Ohio-58, ¶ 33 (3d Dist.); *State v. Rentschler*, 2023-Ohio-3009, ¶ 32 (3d Dist.) ("appellate courts throughout Ohio have repeatedly held that drug trafficking may be proven by circumstantial evidence, including evidence of items such as plastic baggies, digital scales, large sums of money, and the street value of the drugs at issue"). We also have explained that the convergence of illegal drugs, drug paraphernalia (including baggies), and large sums of cash permit a reasonable inference that a person was preparing drugs for shipment. *Carpenter* at ¶ 33.

{¶16} The evidence set forth above demonstrated that Lewis had access to large amounts of controlled substances, as well as to the means for weighing and packaging the controlled substances, protecting himself and that process, and

counting his profits. The fact this same evidence could also apply to Markley is of no consequence as both individuals could be equally culpable. However, we note the large amount of cash was specifically found in Lewis' jacket. Based on the circumstantial evidence presented during the trial, the jury could reasonably infer that Lewis knowingly prepared fentanyl and cocaine for distribution when he knew or had reasonable cause to believe those controlled substances were intended for sale or resale by Lewis or another person. *See Carpenter* at ¶ 33, 38-39; *State v. Conley*, 2005-Ohio-6031, ¶ 34-35 (3d Dist.) (circumstantial evidence—including scales, a razor blade, a large amount of cash, and a television system connected to a camera on the porch—was sufficient to support defendant's conviction for trafficking in cocaine). We conclude that the evidence presented, when viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Lewis' first assignment of error is overruled.

### B.     Second Assignment of Error

{¶17} In the second assignment of error, Lewis argues the trafficking verdicts were against the manifest weight of the evidence and the jury lost its way in finding him guilty of those charges.

### 1. Standard of Review and Applicable Law

**{¶18}** The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "[W]e review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting" evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To reverse a judgment from a jury trial on the weight of the evidence, all three appellate judges must concur. Ohio Const., art. IV, § 3(B)(3).

### 2. Analysis

**{¶19}** Based on the same evidence set forth in our analysis of the first assignment of error, we determine that the jury did not clearly lose its way and create

-11-

a manifest miscarriage of justice in resolving conflicts in the evidence. This is not an exceptional case where the evidence weighed heavily against the convictions.

{¶20} Finally, as referenced above, "[b]ecause we have concluded that [Lewis'] conviction on the trafficking offense was not against the manifest weight of the evidence, an erroneous verdict on the merged count (possession) would be harmless." *State v. Bricher*, 2024-Ohio-394, ¶ 26 (3d Dist.). "Therefore, it is unnecessary for us to analyze his manifest-weight-of-the-evidence argument with respect to the possession offense." *Id.*

{¶21} Lewis' second assignment of error is overruled.

## IV. CONCLUSION

{¶22} For the foregoing reasons, Lewis' assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

*Judgment Affirmed*

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

**/jlm**

Case No. 9-24-52

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge

_____
Juergen A. Waldick, Judge

_____
John R. Willamowski, Judge

DATED:
/jlm